IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN MICHAEL ROSVALL,<br><br>Defendant. | ORDER AND<br>MEMORANDUM DECISION<br><br>Case No. 2:08 CR 839 (TC) |

      A grand jury indicted Defendant Brian Rosvall on one count of possession of methamphetamine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1). Mr. Rosvall has filed a motion seeking to suppress evidence seized during a traffic stop. Mr. Rosvall's main contention is that the initial traffic stop violated the Fourth Amendment. The court agrees with Mr. Rosvall and GRANTS the motion to suppress.

## FINDINGS OF FACT

      Just before 8:00 p.m. on March 7, 2008, Mr. Rosvall and Britney Scarborough were in a red Ford Explorer, waiting at a traffic light at the intersection of 4800 West and 4700 South. Ms. Scarborough was the driver of the Explorer, and Mr. Rosvall was her passenger.

      Waiting at the light immediately behind them was Officer Todd Gray with the West Valley City Police Department. While the cars were stopped, Officer Gray noticed that "the left taillight on the [Explorer] had a piece of tape, red tape, over it, and that the taillight was broken." (Tr. of Hr'g on June 16, 2009, 9.) The tape was "similar to the color of the lens" and was

"illuminated." (Id., 28.) Officer Gray did not recall whether there was any other color of light—other than red light—coming from the taillight. He stopped the Explorer because of the broken taillight. As he explained during the evidentiary hearing, in his view it is "a violation of Utah law to have a broken taillight." (Id., 29.)

Once the vehicles were stopped, Officer Gray approached the Explorer, which he later learned was registered to Ms. Scarborough, and asked her for identification. While Officer Gray was talking to Ms. Scarborough, he noticed that Mr. Rosvall who was sitting in the front passenger seat, was not wearing a seat belt. Officer Gray asked Mr. Rosvall for his identification.

With the identifications in hand, Officer Gray returned to his police car to run a warrants check for Ms. Scarborough and Mr. Rosvall. Officer Gray learned that both Ms. Scarborough's and Mr. Rosvall's licenses had been suspended. While Officer Gray was conducting these checks, another officer, Officer Pittman arrived.

Officer Gray returned to the Explorer and asked Ms. Scarborough to come and talk with him. As the two stood on the road between the Explorer and Officer Gray's car, Officer Gray told her that her license had been suspended. He agreed to give her a verbal warning for driving without a license and for the equipment violation. Officer Gray returned everything to Ms. Scarborough and told her that she was free to leave without the Explorer. He told her that she "needed to make sure that she had a licensed driver driving her vehicle in the future." (Id., 13.)

Officer Gray then asked Ms. Scarborough if "she had anything illegal in her car or anything to hide in the vehicle." (Id., 15.) She said that she did not. Officer Gray asked to search the vehicle. Ms. Scarborough refused and explained that her "grandmother had called . . . over an hour ago, [and] that [she] needed to pick up [her] child." (Tr. of Hr'g on June 19, 2009,

2

6.) Officer Gray told Ms. Scarborough to get out of the Explorer so that he could search it. Officer Gray also told Mr. Rosvall to get out of the Explorer.

On the floor of the passenger side of the Explorer where Mr. Rosvall's feet had been, Officer Gray found a cd case that contained an electronic scale with white residue.  He also found four bags of a white substance, which was later determined to be methamphetamine, hidden near the center console.

Officer Gray walked over to Mr. Rosvall and told him that about the scale.  Mr. Rosvall explained that the case belonged to his brother.  Officer Gray arrested Mr. Rosvall for possession of drug paraphernalia and informed him of his rights.  Mr. Rosvall continued the conversation, explaining again that the case belonged to his brother and that he had grabbed it because he did not like Ms. Scarborough's taste in music.  When asked, Mr. Rosvall said that he had neither a phone number nor an address for his brother so that Officer Gray could contact him.  Officer Gray then revealed that he had also found bags of methamphetamine in the Explorer.  Mr. Rosvall said that he knew nothing about the drugs and asked to talk to a lawyer.

## ANALYSIS

Mr. Rosvall's main contention is that the officer had no legal justification to stop the Explorer.  The Fourth Amendment protects individuals from unreasonable searches and searches. See United States v. Chavez, 534 F.3d 1338, 1343 (10th Cir. 2008).  And although a traffic stop is brief, it still represents a seizure within the meaning of the Fourth Amendment.  Id. Passengers such as Mr. Rosvall have standing to challenge the lawfulness of their detention during a traffic stop even when they lack standing to challenge any subsequent search of the car. United States v. Worthon, 520 F.3d 1173, 1178 (10th Cir. 2008).

Whether a traffic stop is valid depends on whether the particular officer had reasonable

suspicion that the particular motorist violated a traffic regulation of the jurisdiction.[1]  Worthon, 520 F.3d at 1179.  The subjective motives of an officer are irrelevant.  United States v. Brewer, No. 07-4125, 2008 WL 313438, *2 (10th Cir. Feb. 5, 2008).  Although the Fourth Amendment is "not violated if an objectively good reason for a traffic stop exists," the government has the burden "to prove that there was an objective basis for the stop."  United States v. Andrews, 465 F.3d 346, 347 (8th Cir. 2006) (per curiam); see also United States v. Delfin-Colina, 464 F.3d 392, 397 (3d. Cir. 2006) ("[A] police officer does have the initial burden of providing the specific, articulable facts to justify a reasonable suspicion . . . that an individual has violated the traffic laws.").

While an officer need not necessarily be factually accurate in believing that a traffic law has been violated, an officer's mistake of governing law can render the stop unreasonable. Delfin-Colina, 464 F.3d at 398-99 (reviewing cases from various courts).  As the Tenth Circuit explained in United States v. Tibbetts, 396 F.3d 1132 (10th Cir. 2005), the "failure to understand the law by the very person charged with enforcing it is not objectively reasonable."  Id. at 1138 (emphasis in original); see also United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir. 2000) (concluding that "the traffic stop . . . was not objectively grounded in the governing law" and in violation of the Fourth Amendment when what the officer "reasonably suspected, namely that [the defendant] had not affixed a registration sticker to his window, simply was not a violation of Baja California law"); United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998) (noting that

---

[1]Despite dictum in Whren v. United States, 517 U.S. 806 (1996), that suggested a probable cause standard might apply, the court uses the reasonable suspicion standard here.  As the U.S. Court of Appeals for the Third Circuit observed, "the Second, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have all construed Whren to require only that the police have reasonable suspicion to believe that a traffic law has been broken."  Delfin-Colina, 464 F.3d at 396.

4

"the legal justification must be objectively grounded" and concluding that "given that having a turn signal on [without turning] is not a violation of Texas law, no objective basis . . . justified the stop").

Here, Mr. Rosvall challenges whether Officer Gray had reasonable suspicion that the taillight on Ms. Scarborough's Ford Explorer violated Utah traffic law.  (This is the sole alleged traffic violation that even arguably can be sustained based on the evidence in this case.)  As Officer Gray explained, he stopped the Explorer after he noticed that the taillight, which was illuminated, "had a piece of tape, red tape, over it, and that the taillight was broken."  (Tr. of Hr'g on June 16, 2009, 9.)

Utah law provides that an individual "may not operate or move and an owner may not cause or knowingly permit to be operated or moved on a highway a vehicle" that "does not contain those parts or is not at all times equipped with lamps and other equipment in <u>proper condition</u> and adjustment as required" by Utah's traffic code.  Utah Code Ann. § 41-6a-1601 (Supp. 2008) (emphasis added).  But the Utah traffic code provides little specific guidance about the meaning of the phrase "proper condition."  Although the United States claims that the Utah Administrative Code and the federal guidelines found at 49 C.F.R. § 571.108 , which govern "lamps, reflective devices, and associated equipment," <u>id.</u>, "illuminate the issue," they do not.[2] (Gov't Suppl. Brief, 3 Docket No. 41.)

Utah has adopted federal standards regarding vehicle equipment, <u>id.</u> § 41-6a-1601; Utah Admin. Code r. 714-200-3.  The federal guidelines contained in 49 C.F.R. § 571.108 are

---

[2]The United States fails to identify a particular provision of either 49 C.F.R. § 571.108 or the Utah Administrative Code on which this court should rely, but only argues, "Nothing in Utah Code [section] 41-6a or 49 C.F.R. Standard 108 suggests that a broken tail light with tape on it, . . . is in 'proper working condition.'"  (Gov't Suppl. Brief, 3, Docket No. 41.)

extensive and voluminous. The regulations govern what equipment each vehicle must be equipped with, where the equipment must be located, wiring requirements, the requirements for replacements, and other considerations. But the court finds no language that would immediately bar a taillight from being broken. And the Utah Administrative Code is similarly unhelpful. Utah Code Regulation 714-200 contains the standards for vehicle lights and illuminating devices. But, again, none of the provisions is immediately relevant to a broken taillight.

The only guidance that the court can find is the mandate in Section 41-6a-1604(2)(b)(i) that, except for turn signals, hazard warning lights and back-up lights, "all stop lamps or other lamps and reflectors mounted on the rear of a vehicle shall display or reflect a red color." Utah Code Ann. § 41-6a-1604(2)(b)(i).

In this case, the record shows that the cover of the taillight was broken and that the taillight emitted light. Someone had attempted to fix the broken cover by putting a piece of red tape over the taillight, which was "similar to the color of the lens" and "illuminated." (Tr. of Hr'g on June 16, 2009, 28.) But there is no evidence in the record that the taillight displayed or reflected any white light or other color of light besides red. Based on a review of Utah law, the court concludes that Ms. Scarborough's Ford Explorer complied with the requirements of Section 41-6a-1601 as further clarified by Section 41-6a-1604(2)(b)(i) and that Officer Gray was mistaken in his understanding of the law when he conducted the traffic stop.

The court's conclusion here regarding the demands of Utah law is consistent with the views of other courts that have considered similar state statutes. For example, the U.S. Court of Appeals for the Fifth Circuit was faced with a situation where the officer had stopped a vehicle based on the officer's belief that a broken taillight in and of itself constituted a violation of Texas law. United States v. Lopez-Valdez, 178 F.3d 282, 288 (5th Cir. 1999). The officer had noticed

that the defendant's "right taillight had a hole in its lens cover and that the taillight emitted both red and white light." Id. at 284. But Texas law provided in relevant part that "'every motor vehicle . . . shall be equipped with at least two (2) taillamps mounted on the rear, which when lighted as required . . . shall emit a red light plainly visible from a distance of one thousand (1,000) feet to the rear.'" Id. (quoting Tex. Rev. Civ. Stat. art. 6701d, § 111). Texas courts had interpreted this statue as "'[permitting] some white light to be emitted with red light'" from a motorists' taillight. Id. (quoting Vicknair v. State, 751 S.W.2d 180, 187 (Tex. Crim. App. 1996)). Accordingly, the Fifth Circuit considered the seizure unlawful and declined to extend the good faith exception to the exclusionary rule.

The United States cites to State v. Spurgeon, 904 P.2d 220 (Utah Ct. App. 1995), in support of its claim that the broken taillight did violate Utah law. But this case is not persuasive because of the very different facts. The defendants in Spurgeon were speeding and had a broken taillight. Although the officer testified that he pulled the defendants over for the broken taillight, the trial court later found that the stop was justified because of the speeding violation. The issue before the Utah Court of Appeals was the lawfulness of the stop in light of this discrepancy. The court concluded that officer's testimony that he had stopped the defendants because of the taillight "[did] not negate the fact that [the car] was also speeding." Id. at 225. Accordingly, the court concluded that the officer "was justified in stopping the vehicle either because of the speeding violation or because of the broken taillight." Id. Without providing any other commentary, the court noted in a footnote that "[b]roken taillights violate Utah Code Ann. § 41-6-120 (1993) and Utah Admin. R. 714-22-3(4)." Id. at 225 n. 5. Significantly, however, Section 41-6-120 has been repealed and Rule 714-22-3(4) no longer exists in the Utah Administrative Code.

The court is similarly unpersuaded by the United States' appeal to the standards contained in the Utah Department of Public Safety's Official Vehicle Inspection Manual. Whether the condition of a taillight would fail to pass a state safety inspections is a different matter than whether the condition of a taillight violates Utah law. Relevant to Mr. Rosvall's case, Utah only requires that an individual not operate a car that is "in an unsafe condition," "is not at all times equipped with lamps and other equipment in proper condition and adjustment as required by" applicable Utah statutes, or "is equipped in any manner in violation of" those same statutes. Utah Code Ann. § 41-6a-1601(1)(a). Despite the United States' insinuations, Utah law does not make the additional demand that drivers operate only vehicles that are, at all times, in full compliance with all standards in the safety inspection manual. This view, if adopted, would place onerous and unrealistic duties on drivers and car owners.

Having reviewed the scope of Utah law regarding taillights and concluded that the Ford Explorer was in compliance, the court considers the implications of Officer Gray's mistake of law when he conducted the traffic stop.

The U.S. Court of Appeals for the Third Circuit considered such a situation in <u>Delfin-Colina</u>, 464 F.3d at 398. In that case, a Pennsylvania state trooper had stopped the defendant after noticing a necklace or pendant hanging from the rearview mirror of the truck. The trooper later testified that he believed that having "anything" hanging from the rearview mirror violated Pennsylvania law. <u>Id.</u> at 395. But the trooper was wrong. As the court recognized after reviewing the relevant statute, an object hanging from the rearview mirror violated Pennsylvania law only if it was "positioned in such a way as to materially obstruct, obscure or impair the driver's vision through the front windshield." <u>Id.</u> at 395 (quotation omitted). In concluding that the district court did not err in denying the motion to suppress, the Third Circuit explained that a

"mistake of law is only unreasonable when the officer does not offer facts that objectively show that the identified law was actually broken." Id. at 399. And because the Pennsylvania trooper had testified that the hanging item was long enough to touch the dashboard and not stationary, more than likely obscuring the driver's vision, the trooper met his burden. Therefore, the court concluded that the trooper's mistake of law was not per se unreasonable.

Such is not the case here. Officer Gray failed to provide specific, articulable facts that the condition of the Explorer's taillight was actually in violation of Utah law. Accordingly, the court concludes that the stop was unreasonable. Cf. Tibbetts, 396 F.3d at 1138 ("[L]egal justification must be objectively grounded." (quotation omitted)); Commonwealth v. Felty, 662 A.2d 1102, 1103 (Pa. Super. Ct. 1995) (concluding that "the facts, as found by the suppression court, do not support the conclusion that the police possessed reasonable and articulable grounds to stop [the defendant's] car")

Because the government failed to satisfy its burden and demonstrate that the stop was lawful, Mr. Rosvall's motion is granted. Accordingly, the court need not consider whether Mr. Rosvall has standing to object to the subsequent search of the Explorer or whether the challenges he presents have merit.

\>

\>

\>

\>

\>

\>

\>

**ORDER**

For the reasons explained, Mr. Rosvall's motion is GRANTED.  (Docket No. 22.)

SO ORDERED.  DATED this 20th day of August 2009.

                BY THE COURT:

                *Tena Campbell*

                TENA CAMPBELL
                Chief Judge